**J.A. JONES CONSTRUCTION COMPANY, Plaintiff,**

v.

**FLAKT, INC., Defendant.**

**BRENNAN COMPANY, INC., Plaintiff,**

v.

**FLAKT, INC., Defendant.**

**FLAKT, INC., Plaintiff,**

v.

**J.A. JONES CONSTRUCTION COMPANY and Brennan Company, Inc., Defendants.**

Nos. 1:89–CV–1793–RHH, 1:89–CV–1794–RHH and 1:89–CV–1845–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 29, 1990.

**1062**

John Rea Myer, Atlanta, Ga., and D.F. Moore Craig, West Caldwell, N.J., for plaintiffs.

Charles T. Huddleston, Arnall Golden & Gregory, Atlanta, Ga., and Gerard W. Ittig, Kasimer & Ittig, Washington, D.C., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

These cases are before the court on: (1) J.A. Jones Construction Company's ("Jones'") Motion to Confirm Arbitration Award; (2) Brennan Company, Inc.'s ("Brennan's") Motion to Confirm Arbitration Award; (3) Flakt, Inc.'s ("Flakt's") Motion to Vacate Arbitration Award; (4) Flakt's Request for Oral Argument; (5) Flakt's Motion for Leave to Submit Reply Brief; (6) Brennan's Motion for Leave to File a Response; (7) Jones' Motion for Leave to File a Response. The court GRANTS both Jones' and Brennan's Motions to Confirm Arbitration Award and DENIES Flakt's Motion to Vacate Arbitration Award. The court DENIES Flakt's Request for Oral Argument and GRANTS Flakt's, Brennan's and Jones' Motions for Leave.

## FACTS

On or about October 4, 1986, Jones contracted with Flakt to build a gypsum board plant in Port Newark, New Jersey. Jones then contracted with Brennan to install certain equipment for the plant. With certain exceptions not relevant to this case, the Flakt/Jones contract provided that "any dispute, controversy or claim arising out of or relating to" the Agreement "shall be resolved" by arbitration governed by the Rules of the American Arbitration Association. It also provided that New Jersey law would govern any dispute under the contract.

In June, 1987, Flakt and Jones entered into a contract modification, issued as Change Order No. 3, which extended the time for the completion of the contract. Flakt argues that Brennan was first made aware of this schedule change during the course of the arbitration proceedings. Flakt Inc.'s Brief in Support of Motion to Vacate (hereinafter Flakt Brief) at 4. Brennan, however, contends that it knew of Change Order No. 3 as soon as it was issued and adjusted its own performance schedule accordingly. Reply Brief of Brennan Company, Inc. in Support of a Motion to Confirm Award (hereinafter Brennan Reply) at 1.

On or about April 8, 1988, Jones filed a Demand for Arbitration against Flakt. Flakt and Jones then selected their respective party-appointed arbitrators and those two arbitrators chose a third. On or about July 29, 1988, Brennan filed a Demand for Arbitration against both Jones and Flakt. In part, Brennan based its claim on Flakt's alleged failure to deliver certain equipment in a properly assembled condition. Flakt then filed a Motion to Dismiss Brennan's claims against it, arguing that Brennan had neither a contract nor an arbitration agreement with Flakt.

Subsequent to a preliminary conference held on or about October 27, 1988, the arbitrators issued an order dated October 31, 1988 permitting partial consolidation of Brennan's claims into the Flakt/Jones arbitration. The order stated that "[u]pon discussion, it was agreed that all 'pass-through' claims asserted by Brennan through Jones against Flakt would be consolidated into this arbitration. The remaining claims of Brennan will be stayed pending the results of this arbitration." It appears that "pass-through" claims included only those claims related to Flakt's alleged shipment of disassembled equipment to Jones. As the subcontractor who installed that equipment, Brennan "stood in the shoes" of Jones for purposes of asserting those claims.

On June 22, 1989, in Atlanta, Georgia, the arbitrators issued a unanimous award in favor of Jones and Brennan and against Flakt. The panel awarded Jones $2,114,-917.00 plus interest at a daily rate of $573.90 from July 24, 1988 until paid. On or about July 31, 1989, Flakt paid Jones $2,114,917.00. The panel awarded Brennan $744,206.00 plus interest at a daily rate of $203.89 from April 15, 1988 until paid. According to Brennan, Flakt has not paid any portion of that award. Brief of Brennan Company, Inc. in Support of Motion to Confirm Arbitration Award (hereinafter "Brennan Brief") at 7.

On June 28, 1989, Flakt requested the arbitrators to clarify/reconsider their award. The panel responded in a letter dated July 3, 1989, refusing to reconsider the award.

Jones filed an Application for Confirmation of Arbitration Award and Brennan filed a Complaint for Confirmation of Arbitration Award. Flakt filed a Complaint to Vacate Arbitration Award against both Jones and Brennan.[1] A consent order dated September 22, 1989 consolidated the three above-captioned actions. It also converted Flakt's Complaint into a Motion to Vacate pursuant to 9 U.S.C. §§ 6, 10 and 11 and converted Jones' Application and Brennan's Complaint into Motions to Confirm pursuant to 9 U.S.C. §§ 6 and 9.[2]

In its Motion to Vacate, Flakt argues that the arbitrators exceeded their authority and/or manifestly disregarded the law by awarding pre-award interest to Jones and Brennan. It also argues that Brennan lacks standing to confirm its award and that the arbitrators exceeded their authority by awarding Brennan damages in excess of the value of its "pass-through" claims.

## DISCUSSION

### A. Scope of Review

Pursuant to 9 U.S.C. § 10, this court has an extremely limited scope of review over arbitration awards. "[I]n reviewing an arbitration decision, the court is limited to four narrow questions: Whether (1) the decision is the result of fraud; (2) there is evidence of bias on the part of the arbitrators; (3) the arbitrator was guilty of misconduct; and (4) the arbitrator exceeded his powers." *Atlanta National League Baseball Club, Inc. v. Kuhn*, 432 F.Supp. 1213, 1218 (N.D.Ga.1977) (Edenfield, J.) (summarizing 9 U.S.C. § 10(a)–(d)). Courts are careful not to exceed this limited scope of review in order to preserve the efficiency and reliability of arbitration proceedings.

Several courts, however, have recognized that a "manifest disregard of the law by the arbitrators" may also warrant vacating an award. *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir.1986); *Stroh Container Co. v. Delphi Industries*, 783 F.2d 743, 750 (8th Cir.), *cert. denied*, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986). Such "manifest disregard" occurs only

---

1. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332. Flakt is a Delaware corporation with its principal place of business in Knoxville, Tennessee. Jones is a North Carolina Corporation with its principal place of business in Charlotte, North Carolina and Brennan is a New Jersey corporation with its principal place of business in Kearny, New Jersey.

2. All parties properly filed their pleadings in this district pursuant to 9 U.S.C. § 9, which provides that parties should file their motions to confirm or vacate an arbitration award in "the United States court in and for the district within which such award was made" absent any agreement to the contrary.

"when arbitrators understand and correctly state the law, but proceed to disregard the same." *Stroh Container,* 783 F.2d at 750. Although the Eleventh Circuit has never formally adopted the "manifest disregard" standard, it has applied it hypothetically, emphasizing the narrowness of its reach. *O.R. Securities, Inc. v. Professional Planning Assoc.,* 857 F.2d 742, 746 (11th Cir. 1988).

## B. Interest

Flakt argues that the arbitrators exceeded their authority by awarding pre-award interest to Jones and Brennan. It argues that New Jersey law does not allow arbitrators to impose interest for any period prior to the making of the award itself. Flakt also contends that the arbitrators exceeded their authority by calculating that interest at a 10% rate rather than at the lower rate prescribed by New Jersey Court Rule 4:42–11(a).

 Flakt's arguments rest on a misunderstanding of 9 U.S.C. § 10(d), which allows a court to vacate an arbitration award "[w]here the arbitrators exceeded their powers." Flakt seems to argue that arbitrators "exceed their powers" whenever they make a decision that is contrary to or unsupported by relevant legal authority. This argument is without merit. It is clear that "[c]ourts are generally prohibited from vacating an arbitration award on the basis of errors of law or interpretation." *O.R. Securities,* 857 F.2d at 746. Under section 10(d), arbitrators do not "exceed their powers" unless they rule on matters outside of their proper consideration. *See Sun Ship, Inc. v. Matson Navigation Co.,* 785 F.2d 59, 62 (3d Cir.1986) (noting that arbitrators do not "exceed their powers" unless they rule on a question not put before them); *Raytheon Co. v. Computer Distributors, Inc.,* 632 F.Supp. 553, 558 (D.Mass.1986) (arbitrators "exceed their powers" by rendering "[a] decision beyond the scope of the issues submitted for decision"). Thus, a court's ability to vacate an

award under section 10(d) depends not on the outcome of a particular legal decision but rather on whether the arbitrators were requested to make the decision at all.

 Flakt does not argue that the arbitrators lacked the power to consider the issue of interest as an assessment on compensatory damages. It argues only that the arbitrators calculated that interest in an improper manner and at an unlawful rate. The court therefore DENIES Flakt's motion to vacate the interest award pursuant to 9 U.S.C. § 10(d).

 Flakt also appears to argue that the court should vacate the interest award under the "manifest disregard of the law" standard. As noted above, the Eleventh Circuit "has never adopted [this] ground for vacating an arbitration award." *O.R. Securities,* 857 F.2d at 747. Even if this court recognized the "manifest disregard" standard, however, it could not justify vacating the interest award in this case. As the *O.R. Securities* court stated:

> If a court is to vacate an arbitration award on the basis of a manifest disregard of the law, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it. We recognize that this would be extremely difficult where the arbitrators failed to state the reasons for their decision. However, we repeat that a party seeking to vacate an arbitration award on the ground of manifest disregard of the law may not proceed by merely objecting to the results of the arbitration. To do so would result in relitigation of the claim, in violation of the basic purposes of arbitration: a fast, inexpensive resolution of claims.

857 F.2d at 747. Here, the arbitrators did not state the reasons for their award. Therefore, even if this court was expressly authorized to vacate awards based on "manifest disregard," it could not do so in this case.[3]

---

**3.** The court notes that New Jersey Court Rule 4:42–11(a), which Flakt submits the arbitrators violated by awarding interest at a 10% rate, does not apply to arbitration proceedings. *See Rivers v. General Accident Group,* 192 N.J.Super. 355, 470 A.2d 19, 22 (1983) (Rule 4:42–11 "is

## C. Standing

Flakt argues that Brennan has no legal standing to confirm the arbitration award. Flakt emphasizes that it never contracted with Brennan and thus never agreed to arbitrate Brennan's claims. Therefore, Flakt argues, it cannot be directly liable to Brennan. "The arbitrators made a grave legal mistake in issuing an award to Brennan against Flakt.... Accordingly, Brennan's suit against Flakt to confirm the arbitration award should be dismissed for lack of standing." Flakt Brief at 8.

■ To begin, the court notes that it cannot vacate an arbitration award for "lack of standing." *See Kuhn,* 432 F.Supp. at 1218 (court can vacate arbitration award only on grounds set forth in 9 U.S.C. § 10). Therefore, Flakt's argument, stated in proper terms, is that the arbitrators exceeded their powers by awarding damages to Brennan.

■ Flakt, however, agreed to allow Brennan to present its "pass-through" claims to the panel. As the arbitrators stated in an order dated October 31, 1988, "it was agreed that all 'pass-through' claims asserted by Brennan through Jones against Flakt would be consolidated into this arbitration." The arbitrators had authority to effect this consolidation because the parties placed the issue before them.[4] Prior to agreeing to consolidation at the pre-trial conference, Flakt presented the arbitrators with the same arguments in support of its motion to dismiss Brennan's claim that it now makes to this court in support of its motion to vacate. Even if, as Flakt insists, the panel "made a grave legal mistake in issuing an award to Brennan

against Flakt," this court has no authority to correct it.[5] The only remaining question is whether the arbitrators limited Brennan's award to the "pass-through" claims that the parties agreed to consolidate.

## D. "Pass–Through" v. "Delay" Claims

Flakt argues that the award to Brennan significantly exceeded the amount of Brennan's "pass-through" claims, or claims related to the delivery of disassembled equipment that could "pass-through" the Jones contract. Therefore, Flakt argues, the arbitrators exceeded their authority because they agreed to consider only Brennan's "pass-through" claims in the arbitration. If correct, this objection would provide a proper ground for vacating the award under 9 U.S.C. § 10(d). *See supra.* Brennan, however, argues that the arbitrators did not award it any damages beyond the value of its "pass-through" claims. According to Brennan, the award is substantially less than the full value of its properly consolidated "pass-through" claims.

It thus appears that Flakt and Brennan disagree as to what damage items relate to the shipment of disassembled equipment and thereby qualify as "pass-through" claims. In pertinent part, Brennan's claim against Flakt has eight components: (1) excessive pre-assembly of equipment; (2) loss of labor efficiency; (3) excess cost because of winter work; (4) cost of labor wage escalation; (5) extended field overhead; (6) extended home office cost; (7) extended equipment cost; and (8) cost of funding additional work. Flakt argues that only item (1), excessive pre-assembly

applicable only to practice and procedure in New Jersey courts").

**4.** Although a party may initially challenge the existence of an agreement to arbitrate in court under Section 4 of the Arbitration Act, it cannot make such a challenge after an award has been issued. *See Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985) ("after an award has been entered, section 4 is no longer in play; ... and section 10 does not permit the person resisting enforcement of the award to go back and litigate the question of whether there was an agreement to arbitrate"). If Flakt believed that it had no obligation to

arbitrate Brennan's claims, it should have refused to participate in the proceedings and forced Brennan to bring an action to compel arbitration under Section 4.

**5.** Offering what is really an extension of its "standing" argument, Flakt separately contends that "[t]he arbitration award illegally instructs Flakt to pay Brennan directly." As stated above, however, Flakt agreed to consolidate Brennan's "pass-through" claims into its arbitration proceedings against Jones. The arbitrators could not have exceeded their authority by entering an award on claims that the parties expressly agreed to arbitrate.

of equipment, states a valid "pass-through" claim relating to its shipment of disassembled equipment. According to Flakt, the other seven items relate to the delay caused by Change Order No. 3 and were thus expressly excluded from the arbitration by the panel's consolidation order of October 31, 1988. Indeed, Flakt contends that Brennan acknowledged to the panel that these "delay" claims related to Change Order No. 3 and then withdrew them from the arbitration. Flakt Brief at 15.

Brennan, however, argues that all eight items relate to "the disassembly of the equipment and duct work beyond the scope of the contract, and the time and cost required to do this extra work," and are thus part of one "pass-through" claim. Brennan Brief at 15. It contends that "[t]he only Brennan claim that was withdrawn was its damage claim for extended field overhead in the amount of $122,532.00, as it was determined that that figure had already been included in the computations for extended home office overhead and extended equipment cost." *Id.*

As the moving party, Flakt bears the burden of proving that these contested damage items are not "pass-through" claims. *See O.R. Securities*, 857 F.2d at 748. Flakt has not met its burden. It does not explain why these items could not, as Brennan argues, be part and parcel of the damage incurred as a result of the disassembled equipment. It simply argues that they are "by nature" "delay claims" stemming from Change Order No. 3. Response of Flakt, Inc. at 3. In light of the court's duty to "resolve all doubt in favor of the arbitrator's authority to award a particular remedy," Flakt's unsubstantiated assertions fail to prove that these claims were beyond the reach of the arbitrators. *Willoughby Roofing & Supply Co. v. Kajima International, Inc.*, 776 F.2d 269, 270 (11th Cir.1985); *see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Furthermore, Flakt fails to prove that Brennan withdrew the seven disputed damage items and that the arbitrators ignored that withdrawal in making their award. In their response to Flakt's request for clarification, the arbitrators clearly indicated that they did recognize Brennan's withdrawal of a portion of its damage claims: "The panel considered all of the claims made by Brennan before the panel, which, *as amended*, totaled $992,225." (emphasis added). If, as Flakt argues, Brennan withdrew all of items (2) through (8), its total claim, "as amended" would have equalled $236,198.00, the amount of item (1). Therefore, it appears that the amount withdrawn must have been closer to Brennan's figure of $122,532.00, which is the approximate difference between $1,044,757.00, the amount Brennan claims that its expert verified, and the "amended" total of $992,225.00. Brennan Brief at 15.

Flakt also argues that the interest award to Brennan compensates it for "independent," non-pass-through claims because it runs from April 15, 1988, some three months before the beginning of the interest award to Jones. Flakt objects to this timing discrepancy because Brennan, as a subcontractor asserting "pass-through" claims, should fare no better than Jones, the general contractor.

Flakt's argument, however, would apply only if Jones' interest award was based on the same claims as Brennan's interest award, namely, claims relating to the delivery of disassembled equipment. The fact that Brennan asserted "pass-through" claims means only that it "stood in the same shoes" that Jones would have stood in if Jones had asserted those same claims. It does not mean that the interest award to Brennan on its disassembled equipment claims could not begin earlier than the interest award to Jones based on its *other* claims, not related to the delivery of disassembled equipment. Flakt offers no proof that the arbitrators based their interest award to Jones on claims relating to the delivery of disassembled equipment. Therefore, Flakt's mere identification of this "time discrepancy" does not prove that

the arbitrators exceeded their authority by awarding Brennan interest on "non-pass-through" claims.

Flakt has thus failed to prove that the arbitrators exceeded their authority by considering "delay" claims not submitted to them by the parties.

### CONCLUSION

The court GRANTS Jones' and Brennan's Motions to Confirm Arbitration Award and DENIES Flakt's Motion to Vacate Arbitration Award. The court DENIES Flakt's Request for Oral Argument and GRANTS all three parties' Motions for Leave to file various responses.

So ORDERED.