SATURN TELECOMMUNICATIONS
SERVICES, INC., Plaintiff

v.

COVAD COMMUNICATIONS
COMPANY, Defendant.

No. 06–602–51–CIV–JORDAN.

United States District Court,
S.D. Florida,
Miami Division.

June 9, 2008.

James Lorenzo Parado, Alan Craig Gold, Alan C. Gold, Coral Gables, FL, for Plaintiff.

Traci Hope Rollins, Squire Sanders & Dempsey LLP, West Palm Beach, FL, for Defendant.

ORDER CONFIRMING ARBITRATION AWARD

ADALBERTO JORDAN, District Judge.

Everyone supposedly loves arbitration. At least until arbitration goes badly.

When Saturn Communications sued Covad Communications in 2006, Covad successfully moved to compel arbitration un-

der the Federal Arbitration Act, 9 U.S.C. § 1 et seq. Things did not, however, go as Covad expected in the arbitration proceeding. The arbitrator found that Covad had made fraudulent misrepresentations to Saturn, thereby inducing Saturn to enter into a contract with Covad, and awarded Saturn a little over $7 million in damages, including just over $6 million for lost revenue and profits. Saturn, now embracing the arbitration it previously opposed, seeks to confirm the award in its entirety. Covad, for its part, seeks to vacate the award insofar as it included damages for lost revenue and profits.

Following oral argument, and for the reasons which follow, Covad's motion to vacate the arbitration award [D.E. 57] is DENIED, and Saturn's motion to lift the stay of this case and to confirm the arbitration award [D.E. 20] is GRANTED. The parties' cross-motions for sanctions [D.E. 102 & 103] are DENIED.

## I. BACKGROUND

Saturn and Covad entered into a broadband internet access services agreement ("BIA Agreement"), whereby Covad was to provide voice over internet protocol ("VoIP") services to Saturn and Saturn's retail customers. VoIP is software that allows users to communicate over the internet as if they were communicating over regular telephone lines.

The BIA Agreement contains an arbitration clause, which provides as follows:

> Binding arbitration shall be the sole and exclusive remedy for resolution of disputes between the parties. Such dispute shall be submitted for arbitration in San Francisco County, California before a single arbitrator agreed upon by the parties, or, if they are unable to agree, a single arbitrator appointed by the American Arbitration Association ("AAA"). Such arbitration shall be governed by the commercial rules of the AAA.

Saturn Mot. to Confirm, Exhibit A at ¶ 19 (hereinafter "BIA Agreement"). The BIA Agreement also contains a choice of law clause:

> This Agreement shall be deemed to have been made in, and shall be construed pursuant to the laws of the State of California and the United States without regard to conflicts of laws provisions thereof.

*Id.*

After executing the BIA Agreement, Saturn claimed that the services it had contracted for with Covad were inoperable or non-existent, causing it to suffer great losses. Saturn filed a one-count complaint against Covad in the 17th Judicial Circuit in and for Broward County, alleging a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et. seq., and seeking damages, attorneys' fees, and interest. *See* Notice of Removal, Exhibit C, at 2–6. Covad removed the case to federal court and subsequently moved to dismiss under Rule 12(b)(3), or to stay under the FAA, 9 U.S.C. § 3. In May of 2006, I granted Covad's motion and stayed the case pending the completion of arbitration. *See* Order Staying Proceedings Pending Arbitration [D.E. 11].

The parties participated in a 10–day arbitration in September of 2007 in San Francisco, California. In that proceeding, Saturn presented claims for fraudulent inducement, breach of contract, and violation of the FDUTPA. *See* Arbitration Award at 1. The arbitrator issued an award, dated December 5, 2007, in Saturn's favor, finding that Covad fraudulently induced Saturn to sign the BIA Agreement by misrepresenting material facts and by concealing and failing to disclose material facts. *See id.* at 6. Among other things, the arbitrator specifically found that Covad "knew the access products provided under the

BIA Agreement would not support [Saturn's] effort to provide VoIP services when the agreement was signed and when Covad later recommended" other solutions. *See id.* The arbitrator further found that Covad's misrepresentations were knowingly false and made to induce Saturn to sign the BIA Agreement, and that Covad's fraudulent conduct was the proximate cause of damage to Saturn. *See id.* at 7. The arbitrator awarded Saturn lost revenue and profits, without assumption for growth, in the amount of $6,087,598.50, and mitigation damages of $958,644.93, for a total of $7,046,243.43. *See id.* at 8. Despite the showing of fraud, the arbitrator exercised his discretion and chose not to award Saturn punitive damages. *See id.*

Following issuance of the arbitration award, Saturn moved to lift the stay and to confirm the award. Covad opposed the motion to confirm and moved to vacate the award in part. *See* Covad Mot. to Vacate, at 1–2. Covad does not seek to disturb the arbitrator's finding of liability, but rather asserts that the arbitrator exceeded his powers, *see* 9 U.S.C. § 10(a)(4), in awarding Saturn damages for lost revenue and profits. *See* Covad Mot. to Vacate at 2.

The parties appeared for a hearing on their motions on February 7, 2008. During the hearing, I asked the parties whether I should remand the case to the arbitrator for a clarification of his award of damages for lost revenue and profits, and I allowed the parties to file supplemental briefs on this issue. Following the hearing, Saturn filed a memorandum arguing that remand would be improper where, as here, the arbitrator's award is definitive but his reasoning is subject to different interpretations. *See* Saturn Memo, on Remand, at 1. Covad asserted that the arbi-

trator's award was unambiguous and that remand was inappropriate. *See* Covad Reply at 2. After further consideration, I agree with the parties that remand is inappropriate on this record because the arbitrator's award is unambiguous and is capable of enforcement. *See Aeronautical Machinists v. Lockhead,* 1982 WL 172521, *5 (11th Cir.1982) (remand to arbitrator is appropriate where arbitration award is so vague or ambiguous as to be incapable of enforcement).

## II. STANDARD OF REVIEW

 Judicial review of arbitration awards is extremely limited. *See B.L. Harbert Int'l, LLC v. Hercules Steel Co.,* 441 F.3d 905, 909 (11th Cir.2006); *Brown v. Rauscher Pierce Refsnes, Inc.,* 994 F.2d 775, 778 (11th Cir.1993); *Szuts v. Dean Witter Reynolds,* 931 F.2d 830, 831 (11th Cir.1991). The FAA presumes that arbitration awards will be confirmed, and thus enumerates only four statutory bases for vacating such awards. *See B.L. Harbert,* 441 F.3d at 909; *Brown,* 994 F.2d at 778; 9 U.S.C. §§ 9 & 10.[1] Only one of these bases is relevant here. Covad asserts that the arbitrator exceeded his powers in awarding Saturn damages for lost revenue and profits. *See* 9 U.S.C. § 10(a)(4). Covad, as "[t]he party challenging the arbitration award[,] bears the burden of asserting sufficient grounds to vacate the award." *Aldred v. Avis Rent–A–Car,* 247 Fed.Appx. 167, 169 (11th Cir.2007). *See also Riccard v. Prudential Insurance Co.,* 307 F.3d 1277, 1289 (11th Cir.2002) ("The burden is on the party requesting vacatur of the award to prove one of [the] four [statutory] bases [under the FAA].").

---

**1.** There are two additional non-statutory bases for vacating an arbitration award: (1) where the award is arbitrary and capricious; or (2) where enforcement of the award would be contrary to public policy. *See Brown,* 994 F.2d 775. Neither of these bases for vacatur is asserted here.

## III. DISCUSSION

### A. What Law Applies

Covad argues that the California Arbitration Act ("CAA") governs the arbitration procedures in this case because the BIA Agreement provided for the application of California law. *See* Covad Mot. to Vacate at 4. Saturn contends that the FAA applies. *See* Saturn Reply at 4–5. Covad concedes that whether the arbitration proceeded under the CAA or the FAA is of little matter because both statutory schemes provide the same bases for vacating an award. *See* Covad Mot. to Vacate at 4.

■ In any event, I do not believe that the CAA applies to the arbitration proceeding between Saturn and Covad. First, Covad moved to stay the case pending arbitration pursuant to the FAA. *See* Covad Mot. to Dismiss or Stay at 5–6. Second, the BIA Agreement does not provide for the application of the CAA on matters of procedure. The BIA Agreement provides:

> This Agreement shall be deemed to have been made in, and shall be construed pursuant to the laws of the State of California and the United States without regard to conflicts of laws provisions thereof.

BIA Agreement at ¶ 19. Contrary to Covad's argument, this language does not "incorporate[ ] California's rules of arbitration into the contract." *See* Covad Mot. to Vacate at 4. Instead, this general conflicts-of-law provision "acts merely as a substitute for the conflicts-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship." *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 59, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). It does not express an intent for the CAA to govern issues of procedure during, and after, the arbitration proceeding. *See id.* (contract provisions providing that agreement shall be governed by the laws of New York and providing that any controversy must be settled by arbitration did not express intent to have anything other than the FAA apply).

■ Parties may, of course, specify in a contract the rules under which arbitration will be conducted. *See id.* In this case, however, the parties made no express provision in the BIA Agreement regarding the rules which would govern the arbitration. As a result, the FAA applies. *See id. See also Jacada (Europe), Ltd. f/k/a Client/Server Technology (Europe), Ltd. v. Int'l Marketing Strategies, Inc.,* 401 F.3d 701, 710 (6th Cir.2005) (FAA applied where contract contained a generic choice-of-law provision, generic arbitration clause, and no language unequivocally suggesting an intent to displace the FAA), *abrogated on other grounds by Hall Street Assoc., L.L.C. v. Mattel, Inc.,* — U.S. —, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008); *Action Indus., Inc. v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 341–43 (5th Cir.2004) ("we hold that the Agreement's choice-of-law provision does not express the parties' clear intent to depart from the FAA's vacatur standard").

### B. Covad's Motion to Vacate

■ Covad's sole argument is that the award should be vacated in part because the arbitrator exceeded his powers in awarding Saturn damages for lost revenue and profits. *See* Covad Mot. to Vacate at 2; 9 U.S.C. § 10(a)(4). "[W]hen an issue is non-arbitrable," or "when an issue has not been submitted to the arbitrator," the arbitrator exceeds his powers in deciding the issue. *See Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1112 n. 20 (11th Cir.2004); *Davis v. Prudential Sec., Inc.,* 59 F.3d 1186, 1195 (11th Cir.1995).

Covad relies on ¶ 13 of the BIA Agreement, which prohibits damages for lost revenue and profits:

NEITHER PARTY WILL BE LIABLE UNDER ANY CONTRACT, NEGLIGENCE, STRICT LIABILITY OR OTHER THEORY FOR ANY LOST REVENUE, LOST PROFITS, INCIDENTAL, PUNITIVE, INDIRECT OR CONSEQUENTIAL DAMAGES WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO SERVICES AND PRODUCTS.... COVAD'S MAXIMUM AGGREGATE LIABILITY UNDER THIS AGREEMENT, UNDER ANY CONTRACT, NEGLIGENCE, TORT, STRICT LIABILITY OR OTHER THEORY, WILL BE LIMITED TO THE TOTAL AMOUNT PAID BY [SATURN] TO COVAD FOR THE SERVICES GIVING RISE TO SUCH CLAIM IN THE SIX (6) MONTHS PRIOR TO THE OCCURRENCE OF SUCH CLAIM.

BIA Agreement, at ¶ 13. Covad asserts that "[a]t each briefing opportunity, [it] directed the Arbitrator's attention to the limitations quote" in the contract. *See* Covad Mot. to Vacate at 3. Covad concludes that the arbitrator completely disregarded the contractual limitation provision. *See id.* at 4. According to Covad, the arbitrator should have awarded Saturn only those damages allowed by the BIA Agreement, and the award of damages specifically prohibited by ¶ 13 constitutes an act in excess of his powers. *See id.* at 6. Saturn responds that the issue of damages for lost revenue and profits on the fraudulent inducement claim were presented and argued before the arbitrator, without Covad claiming that the arbitrator lacked the authority to determine that issue. *See* Saturn Reply at 5. Saturn concludes that the arbitrator, therefore, ruled on issues properly before him. *See id.*

Saturn further asserts that at arbitration it relied on § 1668 of the California Civil Code as a basis for disregarding the limitation of remedies provision in ¶ 13 of the BIA Agreement. *See* Saturn Memo, on Remand at 1 & Exhibit 1 at 16. In relevant part, § 1668 provides:

All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

Saturn, in its pre-arbitration hearing brief, asserted that

under California Civil Code, Section 1668, any contract which exempts someone from responsibility for its own fraud, or willful injuries to the person or property of another is unenforceable. Thus, under the circumstances of this case, under both Florida and California law, the limitations of liability are of no assistance to COVAD.

*See* Saturn Memo, on Remand, Exhibit 1 at 16. Saturn argued in its brief that § 1668 invalidates all exculpatory clauses which contract away liability for fraudulent or intentional acts, and cited *Blankenheim v. E.F. Hutton & Co.*, 217 Cal.App.3d 1463, 1471, 266 Cal.Rptr. 593 (6 Dist.1990), a California case which held that a contract provision which attempted to hold E.F. Hutton harmless for its own misrepresentations was void under § 1668 as against public policy.

Saturn further argued at arbitration that, under § 3333 of the California Civil Code, the measure of damages for any breach of an obligation not arising from the contract is the amount that compensates for "all the detriment proximately caused thereby." *See* Saturn Memo, on Remand at 1 & Exhibit 1 at 19. Saturn asserted that Covad's fraudulent conduct

caused it to lose revenue and profits. *Id.* at 20–21, 266 Cal.Rptr. 593. The arbitrator agreed, and ultimately concluded that "Covad's fraudulent conduct was the proximate cause of damage to [Saturn]." *See* Arbitration Award at 7.

■ It is true that the arbitrator here did not expressly state that he was invalidating ¶ 13 of the BIA Agreement pursuant to § 1668 or other aspects of California law. But that is not determinative, for arbitrators are not always required to set out their rationale: "When no rationale is given for a lump-sum award, the reviewing court first reviews the arbitration award to determine if there is a rational basis for the award. The onus is on the party requesting the vacatur to refute ... every rational basis upon which the arbitrator could have relied.'" *Brown,* 994 F.2d at 779 (internal citation omitted).

■ I cannot find any evidence in the record that Covad countered Saturn's statutory arguments at arbitration, or told the arbitrator he had no authority to award damages for lost revenue and profits.[2] In its motion to vacate filed here in district court, Covad argues that § 1668 only applies to limitations of *liability,* and not to limitations of *remedies.* *See* Covad Mot. to Vacate at 11. Because the BIA Agree-

ment prohibits lost profits and revenues as remedies, and does not prohibit a finding of liability for fraud or misrepresentations, Covad contends that ¶ 13 is not invalid under § 1668. *See id.* At the hearing on the parties' motions, I asked Covad's counsel whether Covad had raised this argument at arbitration. Covad's counsel could not tell me whether Covad had done so in response to Saturn's § 1668 argument, but reiterated that Covad had raised the limitation of remedies provision itself before arbitration.[3] Covad also did not assert in its reply brief, filed after the hearing, that it presented this theory to the arbitrator in response to Saturn's § 1668 argument. Because the record does not show that Covad raised these arguments at arbitration, they were likely forfeited. *See, e.g., Europcar Italia S.p.A. v. Maiellano Tours, Inc.,* 156 F.3d 310, 315 (2nd Cir. 1998); *Nat'l Wrecking Co. v. Int'l Brotherhood of Teamsters,* 990 F.2d 957, 960 (7th Cir.1993).[4] But I do not need to reach the issue of forfeiture here because Covad's arguments in support of vacatur—whether presented at arbitration or not—are unpersuasive.

Covad cites a number of cases where arbitrators were found to have exceeded their powers by disregarding the plain lan-

---

2. Covad has not filed a full set of its arbitration briefs. Saturn, however, filed Covad's pre-and post-hearing arbitration briefs to support its reply to Covad's response [D.E. 82]. None of Covad's arbitration briefs show that Covad respond to Saturn's § 1668 argument that the limitation of liability provision was unenforceable under California law. In fact, Covad's post-hearing brief contained a 26-page section on damages that failed to raise any defense or argument related to § 1668. In the portion of the damages section addressing lost revenue and profits, Covad's arguments focused on the evidentiary basis for Saturn's damages, not on Saturn's legal entitlement to them in the face of §§ 1668 and 3333. *See* Covad Post–Hearing Br. at 76–89.

3. Covad's pre-hearing argument on the limitation of damages was one sentence: "... [T]he BIA Agreement contains strict and enforceable limitations on damages." Covad Pre–Hearing Br. at 7. In its post-hearing brief, however, Covad cited to, and quoted from, ¶ 13 of the BIA Agreement in arguing that Saturn could not recover damages for lost revenue and profits. *See* Covad Post–Hearing Br. at 69.

4. A party defending a judgment is usually allowed to assert "grounds other than those pressed or passed upon below," but the same is not true for a party attacking a judgment. *See generally United States v. United Foods, Inc.,* 533 U.S. 405, 417, 121 S.Ct. 2334, 150 L.Ed.2d 438 (2001).

guage of the parties' agreement and/or awarding remedies that were contractually prohibited. *See, e.g., Missouri River Serv., Inc. v. Omaha Tribe of Nebraska,* 267 F.3d 848, 855 (8th Cir.2001) (arbitrator directed that award be satisfied by profits from tribe's Iowa casino, but agreement limited satisfaction to property and profits from tribe's Nebraska casino); *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1127–28 (3rd Cir.1971) (arbitrator awarded large cash bond to protect a party from possible future tax liability, but contract only allowed for cash remedies for losses, liabilities, and expenses "incurred or suffered"). *See also California Faculty Ass'n v. Superior Court of Santa Clara County,* 63 Cal.App.4th 935, 952–53, 75 Cal.Rptr.2d 1 (6th Dist.1998) (arbitrator disregarded deferential standard of review and substituted his judgment as to professor's performance). These cases, while correctly decided, are distinguishable. The more relevant FAA cases are those holding that an arbitrator, if given the authority to resolve all disputes between the parties, does not exceed his powers by invalidating an exculpatory clause in the arbitration agreement under applicable state law.

For example, in *Apache Bohai Corp. LDC v. Texaco China BV,* 480 F.3d 397, 400 (5th Cir.2007), Apache argued that the arbitrator exceeded his powers by invalidating an exculpatory clause in the agreement. The Fifth Circuit held, however, that the broad arbitration clause in the parties' agreement covering "any dispute" granted the arbitrator sufficient authority to consider—and invalidate—the agreement's provisions, including the exculpatory clause. *See Apache,* 480 F.3d at 400, 402. In essence, the enforceability of the agreement's provisions was an issue properly before the arbitrator by virtue of the broad arbitration clause. *See id.* at 402. Thus, the Fifth Circuit concluded that when the arbitrator invalidated the excul-

patory clause pursuant to applicable New York law, and proceeded to award damages that would not have been available if the exculpatory clause had remained in effect, he acted upon an issue properly before him and did not exceed his powers. *See id.* at 404.

In another Fifth Circuit case, *Dole Ocean Liner Express v. Georgia Vegetable Company,* 84 F.3d 772, 773 (5th Cir.1996), the arbitration panel awarded Georgia Vegetable damages in excess of the amount provided for in the liquidated damages provision of the parties' agreement. The parties' contract provided that the Mississippi law and United States maritime law governed, both procedurally and substantively. *See id.* at 774. In Mississippi, a liquidated damages provision is not enforceable if it is not a reasonable pre-estimation of damages. *See id.* Applying Mississippi law, the arbitration panel determined that \$500 per container limitation was not a reasonable pre-estimate of the damages Georgia Vegetable would suffer if Dole acted as it did in contracting to ship 170 containers of onions and then shipping only 12 before abandoning its obligation (causing 62 containers of onions to rot on shore). *See id.* at 773–74. The panel added that Dole, having abandoned the contract, could not then seek the protection of the contract (or its liquidated damages provision). *See id.* The Fifth Circuit held that the panel had the "legal power to find the liquidated damages clause void" under state law. *See id.* at 774–75.

Finally, in *Jacada,* a Sixth Circuit decision, the agreement between Jacada and IMS included a limitation of liability provision very similar to the one in this case. Specifically, the contract provided that

the maximum aggregate amount of money damages for which [Jacada] may be liable to IMS under this Agreement, resulting from any cause whatsoever other

than for a breach by [Jacada] of an of its representations or warranties ... shall be limited to the amounts actually paid by IMS to [Jacada] under the Agreement.

*Jacada,* 401 F.3d at 712. The arbitrators did not apply this provision in determining the amount of damages because they found that the provision was "unreasonable and unconscionable and ... that it fail[ed] of its essential purpose." *See id.* The arbitrators reasoned that to give effect to the limitation of liability provision would render IMS' rights under the contract meaningless, and they disregarded the provision in order to "effectuate the core purpose of the contract." *See id.* at 713. Disregarding the limitation of liability provision in this way, the Sixth Circuit held, was not a basis to vacate the award. *See id.* at 712–13. Rather, the Sixth Circuit reasoned, "[the arbitrators] were seeking to give the contract what to them was its intended meaning; and we will not reverse their plausible interpretation." *See id.*

■ *Apache, Dole Ocean,* and *Jacada* stand for the principle that when parties vest the arbitrator with the power to resolve all disputes arising from their agreement, the arbitrator may interpret the agreement and apply relevant state law to determine whether certain provisions of the contract are enforceable. I find this principle persuasive, and proceed to apply it here.

■ The BIA Agreement contains a broad arbitration clause stating that "[b]inding arbitration shall be the sole and exclusive remedy for resolution of disputes between the parties." *See* BIA Agreement at ¶ 19. "The power and authority of the arbitrators in an arbitration proceeding is dependent on the provisions of the arbitration agreement under which the arbitrators were appointed," *Szuts,* 931 F.2d at 831, and here nothing in the broad arbitration clause removed from the arbitrator the power to determine the validity of the BIA Agreement's provisions, including ¶ 13. In fact, the BIA Agreement contemplated that an arbitrator would be determining the enforceability of the Agreement's provisions. Specifically, the BIA Agreement states:

If any provision of this Agreement shall be adjudged by any court or arbitrator of competent jurisdiction to be illegal, unenforceable or invalid, that provision shall be limited, redrafted or eliminated to the minimum extent necessary so that the Agreement shall otherwise remain in full force and effect and enforceable.

BIA Agreement at ¶ 19. Thus, the parties understood that a court *or an arbitrator* might—at some point—determine that a provision of the Agreement was invalid or otherwise unenforceable. In light of the BIA Agreement's provisions, the reasonable inference is the parties intended that the arbitrator interpret the contract, determine the validity of the contract's provisions, and settle all disputes arising from the contract.

As Covad conceded at the hearing, the arbitrator certainly had the authority to award Saturn *some* damages. This, therefore, is not a case where the arbitrator reached out to decide an issue—damages—that had not been submitted to him. *See Davis,* 59 F.3d at 1195.

■ In my view, the arbitrator had sufficient grounds under California law to invalidate (or at least not apply) ¶ 13 of the BIA Agreement. First, the arbitrator found that Covad had fraudulently induced Saturn into executing the BIA Agreement. Because California common law provides that "a contract induced by fraud renders the entire agreement voidable," *Filet Menu, Inc. v. C. C.L. & G, Inc.,* 79 Cal.App.4th 852, 862, 94 Cal.Rptr.2d 438 (2nd Dist.2000), the arbitrator had a basis (or at least an

arguable basis) for not applying the limitation on damages contained in ¶ 13. Second, although Covad argues that under § 1668 and California law a contractual limitation with respect to damages as opposed to a contractual limitation on liability-is permissible, there are a number of California cases reading § 1668 more broadly and suggesting that, where an intentional tort like fraud is concerned, even a mere limitation on damages runs afoul of § 1668. *See, e.g., Torrance Memorial Ctr. v. Toshiba America Med. Sys., Inc.,* 2002 WL 453913, * 12 (Cal.App. 2nd Dist.2002) (in fraud case, contractual provision "precluding consequential damages or economic loss" was limited by the rule (set forth in § 1668) precluding an agreement to exempt a party from responsibility for fraud); *Ampac JV Group, Inc. v. Gen. Motors Corp.,* 2002 WL 31623611, * 12 (Cal.App. 2nd Dist 2002) (under § 1668, "contractual attempts to exempt a party from liability for its own fraud or intentional wrongdoing are against public policy," and therefore clause in contract prohibiting "special, incidental, or consequential damages or expenses" was ineffective in case alleging fraud). Given this caselaw, the arbitrator did not exceed his powers in awarding damages beyond those permitted by ¶ 13.

 Distilled to its essence, Covad is arguing that the arbitrator misapplied California law, including § 1668, in awarding Saturn damages for lost revenue and profits. It is well-established, however, that a district court may not vacate an arbitration award simply because the arbitrator fumbled the applicable legal principles. *See Aldred,* 247 Fed.Appx. at 169; *B.L. Harbert,* 441 F.3d at 910; *Scott v. Prudential Sec., Inc.,* 141 F.3d 1007, 1014 (11th Cir.1998); *Ainsworth,* 960 F.2d at 940. I do not agree with Covad's apparent position that whenever an arbitrator misapplies the applicable state law to the facts of a case (and invalidates a provision of the parties' agreement based on that misapplication of law) then he necessarily acts in excess of his authority. Accepting Covad's position would essentially require a district court to undertake a *de novo* review of thesubstantive law invoked and applied in an arbitration proceeding, thus improperly second-guessing the arbitrator's legal analysis. It is generally not the province of a court, under the FAA, to address the merits of a dispute which has already been resolved by the arbitrator. *See American Fed'n of State, County and Mun. Employees, Local Lodge No.,* 715 F.2d 1517, 1518 (11th Cir.1983) ("It is impermissible for courts to usurp the functions of the arbitrator by reviewing the merits of the award or construing its meaning."). If state law provides an arguable basis for what the arbitrator did, that is the end of the matter under § 10(a)(4) of the FAA. *See Kyocera Corp. v. Prudential–Bache Trade Services,* 341 F.3d 987, 997 (9th Cir.2003) (*en banc*) ("arbitrators 'exceed their powers' not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational' or exhibits 'manifest disregard of law'"); *Int'l Telepassport Corp. v. USFI, Inc.,* 89 F.3d 82, 85–86 (2nd Cir.1996) (refusing to vacate arbitrator's award of lost profits to new business despite lack of cases awarding such damages in New York because it was not clear that such damages were forbidden by New York law).

Again, the FAA presumes that arbitration awards should be confirmed, and provides only a few narrowly-confined circumstances under which an award may be vacated. The parties are presumed to understand, when they submit to arbitration, that they subject themselves to the possibility that the arbitrator will make errors of fact and/or law. For a district court to second-guess an arbitrator's conclusions of

law whenever a party disagrees with the outcome—on the asserted basis that an error of law necessarily means that the arbitrator exceeded his powers—would make arbitration nothing but a costly yet meaningless exercise. That is not the intent of the FAA, and it was not the intent of the parties here when they agreed to arbitration of their disputes. *See J.A. Jones Const. Co. v. Flakt*, 731 F.Supp. 1061, 1064 (N.D.Ga.1990) (rejecting argument that arbitrator exceeds his powers whenever he makes a decision that is contrary to or unsupported by relevant legal authority). Covad obviously believed that an arbitral forum would be more favorable to its position, or it would not have moved to compel arbitration. Covad obviously guessed wrong, but it cannot now try to avoid the decision it sought.

### C. Motions for Sanctions

Following Covad's motion to vacate the arbitration award, Saturn moved for Rule 11 sanctions against Covad for engaging in a frivolous attempt to relitigate this case, which has already run its course through a lengthy arbitration proceeding. *See* Saturn Mot. for Sanctions at 3–4. Covad responded, that every argument it made in its motion to vacate was far from frivolous and was supported by case law. *See* Covad Resp. to Mot. for Sanctions at 1–2. Covad also predictably moved for sanctions against Saturn for the fees incurred in having to oppose Saturn's motion for sanctions. Both motions are DENIED.

■■■ Rule 11 provides that a party may be sanctioned for, among other things, filing a motion for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; or a motion that presents claims, defenses, and other legal contentions that are not warranted by existing law or are frivolous. After reviewing the record, the parties' motions and responses, and the relevant case law cited by both parties, I cannot say that Covad's motion to vacate was frivolous or presented for an improper purpose. Furthermore, I cannot say that Saturn's motion for sanctions was improper or frivolous considering the lengthy and protracted battle this case has become, much to the fault of Covad, which first insisted upon arbitration only to move to vacate the award after losing in that forum. The parties' frustrations are understandable, but neither party's conduct has been sanctionable. It is time to put an end to this case, at least in this court.

### IV. Conclusion

Covad's motion to vacate the arbitration award is DENIED, Saturn's motion to lift the stay of this case and to confirm the arbitration award is GRANTED. The parties' cross motions for sanctions are DENIED. This case is closed.

DONE and ORDERED.