**DE BEERS CENTENARY AG, Petitioner,**

v.

**John–Robert: HASSON, Respondent.**

**Case No.: 10–CIV–23024–UU.**

United States District Court, S.D. Florida.

Nov. 1, 2010.

Edward M. Mullins, Jenelle E. La Chuisa, Astigarraga Davis Mullins & Grossman, P.A., Miami, FL, for Petitioner.

John-Robert: Hasson, Pro se.

### ORDER GRANTING PETITION AND MOTION TO VACATE ARBITRATION AWARD

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Petitioner De Beers Centenary AG's ("De Beers") Petition and Motion to Vacate Arbitration Award ("Petition"), filed August 23, 2010. (D.E. 1.) Respondent John–Robert: Hasson filed his Response to Petition for Confirmation of Arbitration Award on September 13, 2010. (D.E. 5.) De Beers filed its Reply in Further Support of Petition and Motion to Vacate Arbitration Award on September 20, 2010. (D.E. 6.) The matter is ripe for disposition. Also before the Court is Respondent's Motion to Strike Petitioner's "Motion to Further Support Original Pleading," filed October 8, 2010. (D.E. 9.)

THE COURT has reviewed the motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

### I. Background

De Beers' Petition arises out of its receipt of an alleged arbitration award issued against De Beers in favor of Hasson. De Beers is an entity formed under the laws of Switzerland and is a company within the De Beers Group. (Petition ¶ 1.) Hasson is a *pro se* litigant and prisoner at the Federal Correctional Complex in Coleman Florida. (Petition ¶ 2.) Hasson is serving a 480–month sentence for multiple counts of wire fraud, conspiracy to commit

crimes against the United States, conspiracy to commit money laundering, and conspiracy to commit obstruction of justice. (*Id.*) Non-party Leonard Osberg, of Loxahatchee, Florida, allegedly acted as arbitrator and issued the award in favor of Hasson. (Petition ¶ 3.)

## A. The First Arbitration Award ("First Claim")

In February 2009, Hasson filed an "Application for an Order Confirming the Award Made Pursuant to an Arbitration in Accordance to Title 9 Arbitration" ("DC Application") in the Superior Court for the District Columbia ("DC Court"). (Petition ¶ 11.) Hasson asked the DC Court to confirm an allegedly fabricated arbitration award for over $6.6 billion against "De Beers et. al." and Nicholas Oppenheimer, the Chairman of De Beers. (*Id.*) De Beers moved to dismiss the DC Application for failure to state a claim upon which relief can be granted. (Petition ¶ 12.) The DC Court granted the motion to dismiss and denied the DC Application. (*Id.*) For the following reasons, the DC Court found no "valid agreement [to arbitrate]" between the parties: The alleged arbitration agreement lacked De Beer's signature; the documents submitted by Hasson were "unilaterally created by [Mr. Hasson] and [did] not purport to contain authentication of the arbitration proceeding and/or award by an accredited arbitrator or otherwise"; and Hasson "failed to provide sufficient evidence that arbitration took place between [Hasson] and [De Beers]." (Petition ¶ 12 & Ex. 1 at 3.)

## B. The Arbitration Award At Issue ("Second Claim")

In October 2009, Hasson sent De Beers a copy of two letters. (Petition ¶ 13.) In the first letter, dated August 10, 2010, Hasson asked Osberg to serve as arbitrator in a case captioned "*John Robert: Hasson v. De Beers Family of Company*

*and Board of Directors.*" (Petition ¶ 13 & Ex. 2, Encl. 3.) In the second letter, dated August 31, 2010, Osberg accepted his appointment as arbitrator. (Petition ¶ 13 & Ex. 2, Encl. 4.)

Upon receiving these letters, counsel for De Beers, John R. Seward, tried unsuccessfully to reach Osberg by telephone. (Petition ¶ 14.) After three failed attempts to reach Osberg, Seward sent him a letter on November 12, 2009, explaining that the " '[First Award] that Mr. Hasson purports to act under has been found invalid by the [DC Court], and that neither De Beers Centenary AG nor any other De Beers company or official has agreed to arbitrate any dispute with Mr. Hasson.' " (Petition ¶ 14 & Ex. 2, Encl. 1.) Osberg contacted Seward on November 16, 2009 and told him that he was unaware that the DC Court had found that no arbitration agreement existed between De Beers and Hasson. (Petition ¶ 15 & Ex. 1, Seward Decl. ¶ 3.) Osberg also told Seward that he was inclined to step down as arbitrator but first wanted to review the documents related to the matter. (*Id.*)

On November 18, 2010, Hasson sent a letter to Osberg, responding to De Beers' November 12th letter regarding the DC Court's dismissal of Hasson's application. (Petition ¶ 15 & Ex. 3.) In the letter, Hasson stated that the DC Court's finding was only relevant to the First Claim but admitted that the parties to the corresponding agreement had not actually arbitrated, nor had an arbitrator actually rendered an award. (Petition ¶ 17 & Ex. 3.) Hasson also admitted that De Beers never signed the "notice to arbitrate" that corresponded to the Second Claim. (Petition ¶ 16 & Ex. 3.) But Hasson maintained that De Beer's failure to "contest [to] or reject" his notice to arbitrate "constituted [De Beers'] acceptance" of its terms. (*Id.*)

In a November 30, 2009 letter, Osberg informed Seward that he would arbitrate

the Second Claim because he found no relationship between the First Claim and the Second Claim. (Petition ¶ 16 & Ex. 4.) Osberg also informed Seward that he would initiate a "private-administrative remedy" and directed Seward to submit on behalf of De Beers eleven "Proofs of Claim(s)." (*Id.*) Osberg warned Seward that if De Beers failed or refused to provide the Proofs of Claims "within ten days plus three days grace" from return of service, he would construe the lack of response as a "general acquiescence and acceptance" of his appointment as arbitrator (*Id.*) On December 15, 2009, Seward sent Osberg a letter stating that De Beers had never agreed to arbitrate any dispute with Hasson and that De Beers had never seen or been served with an arbitration agreement related to the Second Claim (Petition ¶ 16 & Ex. 6.)

On December 16, 2009, Hasson served De Beers a package of documents through CT Corporation. (Petition ¶ 22.) One document, dated November 4, 2009, labeled "Summons," and signed by Osberg, required De Beers to answer an "attached Complaint" within twenty days. (Petition ¶ 22 & Ex. 7, Encl. 3.) No complaint was attached. (Petition ¶ 22.) Another document, dated November 7, 2009, labeled "Petition for Arbitration Award and Confirmation of Notarial Default Judgment," was on Osberg's letterhead but signed by Hasson. (Petition ¶ 23.) That document contained a request that judgment "be awarded in accordance with Article 13 of the agreement of binding arbitration and its addendum, for the amount of $1,180,119,607.30." (Petition ¶ 23 & Ex. 7, Encl. 4.)

The package of documents also included a document titled "Notice of International Commercial Claim, Special Private Self-Executing Security Agreement by Private Administrative Remedy Demand" ("Notice") (Petition ¶ 24 & Ex. 7, Encl. 5.) Page 11 of the Notice contains a clause titled "Notice and Agreement of Binding Arbitration" ("Alleged Arbitration Clause.")[1] (Petition ¶ 24 & Ex. 7, Encl. 5 at 11–13.) The Alleged Arbitration Clause states, *inter alia,* that:

> Respondent's failure to consent, object or refute this arbitration agreement ... will constitute Respondent's consent to binding arbitration. ... Respondent(s) have only ten (10) days to properly reject this [Alleged Arbitration Clause], with a three (3) day grace period granted for mailing. ... Failure to properly respond .... will constitute Respondent's formal acceptance of this agreement, binding Respondent(s) to arbitration in accordance with this arbitration clause and waiving an right to reject this notice anytime thereafter.

(Ex. 7, Encl. 5 at 11–13.) No person representing or associated with De Beers signed the Notice and the Alleged Arbitration Clause contained therein. (Petition ¶ 25 & Ex. 7, Encl. 5.) The typewritten names of different De Beers' directors appear on each signature line, and above each name is the phrase "Signature by Default." (*Id.*)

On December 29, 2009, Osberg sent Seward an affidavit in which he attested that De Beers had accepted his appointment as arbitrator by failing to submit the proofs of claims that Osberg had requested earlier that month. (Petition ¶ 26 & Ex. 9.) In

---

1. Hasson claims that the Notice and Alleged Arbitration Clause contained therein is intended to govern disputes arising out of "a pending class-action settlement stemming from this case: *Sullivan v. DB Investments,* Civil Action Index No. 04–2819." (Response to Petitioners' Motion to Vacate Arbitration Award, hereinafter "Response" ¶ 1.) However, Hasson concedes that he excluded himself and his companies from the *Sullivan* class-action lawsuit. (Response ¶ 3.)

a letter dated February 16, 2010, Seward reiterated to Osberg that he should not serve as arbitrator because De Beers had never agreed to arbitrate any dispute with Hasson. (Petition ¶ 30 & Ex. 13.) On June 3, 2010, De Beers Diamond Jewellers U.S. ("DBDJ"), Inc., an independently-managed joint venture between De Beers and Moët Hennessy Louis Vuitton, was served with an Order signed by Osberg as "Arbitrator," granting Hasson's "petition for an arbitration award and confirmation of the notarial default judgement." (Petition ¶¶ 4, 31–32 & Ex. 14.) De Beers was never served with a copy of the award. (Petition ¶ 32.) [2]

De Beers has brought this Petition and Motion to Vacate Arbitration Award pursuant to Article V(1)(e) of the 1958 New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), which governs awards rendered under an arbitration agreement between a U.S. and non-U.S. party, and section 203 of the Federal Arbitration Act (the "FAA"), which provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States." Accordingly, the Court reviews De Beers' Petition under the FAA. *See Zeiler v. Deitsch,* 500 F.3d 157, 164 (2d Cir.2007) (noting that when an arbitration between a U.S. party and a non-U.S. party took place in the United States and vacatur is sought in the United States, the award is subject to review under the FAA).

## II. Legal Standard

▉▉▉▉ The FAA creates a presumption in favor of confirming arbitration awards and sets forth only four grounds for vaca-

tur. *Montes v. Shearson Lehman Bros., Inc.,* 128 F.3d 1456, 1458 (11th Cir.1997). Judicial review of arbitrators' decisions is limited, as the court must "give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *Scott v. Prudential Sec., Inc.,* 141 F.3d 1007, 1014 (11th Cir.1998) (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)). The party seeking vacatur bears the burden of establishing grounds sufficient to vacate the arbitration award. *Id.*

The FAA provides that the court may vacate an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## III. Analysis

De Beers denies that it entered into any arbitration argument with Hasson by default and otherwise argues that Hasson unilaterally created and signed the Notice

**2.** Section 12 of the Federal Arbitration Act provides that a motion to vacate an arbitration award "must be served upon the adverse party or his attorney within three months after the award is filed or delivered." Although De Beers was never served with a copy of the award, DBDJ delivered the award to De Beers on or after June 3, 2010, the date DBDJ was served with the award. De Beers served Hasson with its Petition and Motion to Vacate on August 27, 2010 (D.E. 4.) Accordingly, De Beers' Petition and Motion is timely.

and the Alleged Arbitration Clause. Accordingly, De Beers maintains the Court should vacate the award.

Hasson argues that the Court should not vacate the arbitration award because Osberg rendered it pursuant to a valid arbitration agreement. Hasson concedes that no De Beers representative signed the Notice or was present when it was signed by "default" on behalf of the directors, but Hasson contends that De Beers' failure to object to the agreement implied its consent to arbitrate. Hasson also argues that De Beers "chose to remain silent" after it learned that Osberg had accepted appointment as arbitrator and its silence further reflects its consent. (*See* Response to Petitioner's Motion to Vacate Award, hereinafter "Response" at 4.)

■ The main issue in this case is whether De Beers and Hasson agreed to arbitrate disputes.[3] This Court has the authority to decide the question of "arbitrability," because there is no "clear and unmistakable evidence" that De Beers agreed to submit the question to Osberg or any other arbitrator. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (courts have the authority to decide whether the parties consented to arbitrate disputes unless there is "clear and unmistakable evidence" that the parties agreed to submit the question of "arbitrability" to an arbitrator). In fact, De Beers' persistent contentions that it did not consent to arbitration, coupled with its numerous written objections to the arbitration is evidence that it most likely did not agree to submit the issue of arbitrability to an arbitrator. *See Id.* at 946, 115 S.Ct. 1920 (reasoning that the respondents "forceful objections to the arbitrators deciding their disputes" implied that they "did not want the arbitrators to have binding authority over them" on the question of "arbitrability").

■ When deciding whether parties agreed to arbitrate a matter, courts generally should apply ordinary state law principles governing the formation of contracts. *Id.* at 946, 115 S.Ct. 1920. "A meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract." *Business Specialists, Inc. v. Land & Sea Petroleum, Inc.,* 25 So.3d 693, 695 (Fla. 4d DCA 2010). Hasson concedes that no De Beers representative physically signed the Notice containing the Alleged Arbitration Clause.[4] He also concedes that no De Beers representative witnessed their names being "Sign[ed] by Default" onto the Notice. Moreover, De Beers learned about the Alleged Arbitration Clause for the first time *after* Osberg had already agreed to arbitrate. Therefore, Hasson's argument, that De Beers' failure to object to an agreement that it had never signed, never seen, and never heard of somehow bound De Beers to its terms, is nothing short of ludicrous. There simply was no meeting of the minds between De Beers and Hasson, thus there was no enforceable arbitration agreement.[5] Accordingly, there were

---

3. A peripheral issue in this case is the level of Hasson's involvement in the *Sullivan* lawsuit. Hasson claims that the Notice and Alleged Arbitration Clause therein is meant to govern disputes arising out of the *Sullivan* settlement or agreement, yet he concedes that he excluded himself from the lawsuit. *See* n. 1. Therefore, it is unclear exactly which settlement the Alleged Arbitration Clause is meant to govern. Neither De Beers nor Hasson have adequately briefed this issue, thus the Court does not address it in much detail.

4. An investigation into Hasson's alleged "Notice of International Commercial Claim, Special Private Self–Executing Security Agreement by Private Administrative Remedy Demand" revealed no other instances in which a valid arbitration agreement under the FAA was structured in such a manner.

5. A party cannot be bound under the FAA to arbitrate by "default." *See Nature Schoendorf v. Toyota of Orlando,* 2009 WL 1075991, at *3 (M.D.Fla. Apr. 21, 2009) (holding that arbitra-

no claims that Osberg had the power to resolve, and thus, he exceeded his authority by issuing an award in Hasson's favor. *See Saturn Telecomm. Servs., Inc. v. Covad Commc'ns Co.*, 560 F.Supp.2d 1278, 1282 (S.D.Fla.2008) ("when an issue is non-arbitrable, or when an issue has not been submitted to the arbitrator, the arbitrator exceeds his powers in deciding the issue."); *Kesterson v. NCO Portfolio Mgmt., Inc.*, 2009 WL 812023, at *3 (N.D.Ind. Mar. 27, 2009) (vacating an arbitration award because the arbitrator exceeded his authority in issuing an award when there was no proof that parties agreed to arbitrate). For the foregoing reasons, it is hereby

ORDERED AND ADJUDGED that De Beers' Petition and Motion to Vacate Arbitration Award is GRANTED. It is further

ORDERED AND ADJUDGED that Hasson's Motion to Strike Petitioner's "Motion to Further Support Original Pleading" is DENIED AS MOOT.

tion is a matter of consent and a party cannot be required by default to submit to arbitration a dispute which he has not agreed so to submit).